## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

––––––––––––––––––––

№ 24-CV-0364 (RER)

––––––––––––––––––––

### Jatiek Smith

versus

### MDC Brooklyn Warden

––––––––––––––––––

**OPINION & ORDER**

––––––––––––––––––

**RAMÓN E. REYES, JR., District Judge:**

*Pro se* Petitioner Jatiek Smith ("Petitioner" or "Smith") is a federal prisoner in the custody of the Federal Bureau of Prisons ("BOP"), currently incarcerated at the United States Penitentiary, Canaan in Waymart, Pennsylvania ("USP Canaan"). (ECF No. 17, Petitioner's Reply Affidavit ("Pet'r Reply Aff.") at 13). Petitioner was previously incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn," "MDC," or "Respondent"). (*Id.* at 14; ECF No. 7, Respondent's Memorandum in Opposition ("Resp't Opp.") at 5). On January 19, 2024, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against MDC Brooklyn alleging that the sanctions imposed on him for disciplinary infractions, specifically the loss of social visits, are unconstitutional. (ECF No. 1, Petition ("Pet.") at 10). Petitioner seeks an order directing Respondent to restore his visitation rights and a "directive" to end MDC's broader practice of denying pre-trial inmates "social visits as a means of punishment." (Pet. at 7). Because the denial of visitation rights has been carried over from MDC to USP

Canaan (ECF No. 15, Petitioner's Reply ("Pet'r Reply") at 7), Petitioner's claims for restoration of visitation rights are not moot, even though he is no longer housed at MDC.

After a careful review of the record, and for the reasons set forth herein, the petition is DENIED.[1]

## BACKGROUND

I.    Factual Background

On March 5, 2023, Smith was found in possession of a prohibited cellular telephone, which he had "artfully concealed in a [L]ays chips container." (ECF No. 8, Declaration of Kenneth Bork ("Bork Decl.") ¶ 11 (alteration in original)). This was the second time Smith had been caught with a contraband phone in MDC Brooklyn. (*Id.* ¶¶ 7, 9). Due to the severity of the incident, on March 10, 2023, the Unit Disciplinary Committee heard and referred the matter to MDC Brooklyn's Discipline Hearing Officer ("DHO"). (*Id.* ¶ 13). On March 21, 2023, the DHO conducted a hearing, in which Smith admitted the charges and stated, "I did what I did." (*Id.* ¶ 16). Subsequently, the DHO imposed the following sanctions: "disallowance of forty-one days of good conduct time, disciplinary segregation for thirty days, and loss of social visiting privileges for two years, running from March 21, 2023 through March 20, 2025." (*Id.* ¶ 17).

Despite these sanctions, Petitioner continued to engage in prohibited acts. (*Id.* ¶¶ 18, 19, 20). On October 24, 2023, the DHO found that Petitioner committed various prohibited acts, but did not impose the sanction of loss of social visiting privileges. (*See id.* ¶ 19). On February 21, 2024, almost a full year after Petitioner's March 2023 incident, the DHO found that Petitioner committed: "Setting a Fire," "Destroying or Disposing of an

---

[1] The Court acknowledges and offers its deep gratitude to Hyun Ji ("Tammy") Jung, a judicial intern and third-year law student at Brooklyn Law School, for her assistance in the research and drafting of this opinion.

item during a search," "Refus[ing] to Obey an Order," and "Possessing a Hazardous Tool." (*Id.* ¶ 20). For "Possessing a Hazardous Tool" in this February 2024 incident, Petitioner was sanctioned with "loss of visiting privileges for two years, from March 21, 2025 through March 20, 2027." (*Id.*) This was the second time Petitioner was sanctioned with a denial of social visits, totaling four years without visitation privileges.

Petitioner appealed both sets of visitation sanctions. On March 28, 2023, Petitioner appealed the DHO's March 21, 2023, decision to BOP's Northeast Regional Director, which was initially rejected on April 20, 2023, due to procedural errors. (*Id.* ¶ 23). On May 3, 2023, Petitioner resubmitted his appeal, which was subsequently denied on June 30, 2023. (*Id.*) On September 28, 2023, Petitioner appealed the Regional Director's June 30th response to BOP's General Counsel. (*Id.* ¶ 24). On October 2, 2023, BOP's General Counsel rejected the appeal because Petitioner, among other issues, had not submitted his appeal on the proper BP-11 form, nor had he included a copy of the BP-10 appeal or response. (*Id.* ¶ 25). Further, Petitioner's appeal was untimely and lacked a staff verification stating a reason for the delay. (*Id.*) Petitioner claims he cured the defects and sent a corrected appeal to the General Counsel along with a memorandum from Unit Manager N. Bullock, dated November 10, 2023, explaining that Petitioner did not receive the June 30th denial until August 25, 2023. (Pet'r Reply Aff. at 5–6, 23–24).

With respect to the February 2024 claims, Petitioner started the administrative remedy process *twice*: The first commenced while he was at MDC and continuing after he was transferred to USP Canaan, and the second started after he was transferred to USP Canaan. (Pet'r Reply Aff. at 2–6). At MDC, Petitioner was in the Special Housing Unit ("SHU") until April 10, 2024, during which time he was denied access to a ball-point

pen, which is required for filling out various appeals forms. (*Id.* at 2). Thus he was unable to timely appeal the February 2024 sanctions. (*Id.* at 2–3). After his release from the SHU, Petitioner attempted to appeal the denial of pens, which, if successful, would have explained why his February 2024 sanctions appeal was untimely. (*Id.*) However, because of a lockdown at MDC, during which staff do not provide or collect administrative remedy forms, Petitioner was unable to file the appeal of the denial of pens. (*Id.* at 3). Before he could successfully file, he was transferred to USP Canaan on July 3, 2024, and was separated from his property, including the decisions rejecting his internal appeals of the denial of pens, which are required attachments for higher appeals. (*Id.* at 3–4). Finally, however, Petitioner received his property at USP Canaan on August 20, 2024. (*Id.* at 4). Petitioner filed an appeal of the denial of pens to the Regional Director on August 28, 2024, attaching a memorandum from Unit Counselor T. Maolatesi dated August 27, 2024, explaining the delay was caused by the transfer and separation from his property. (*Id.*) But because he failed to attach a specific document, Petitioner appeal was sent back to him. (*Id.*) However, Petitioner claims he had never received the required specific document, so he sent his papers back to the Regional Director on September 15, 2024, explaining that fact. (*Id.*) Petitioner alleges he never received a response. (*Id.*)

On July 25, 2024, after he learned the sanctions would also be applied at USP Canaan, Petitioner commenced a *second* appeals process directly challenging the February 2024 loss of visitation sanctions. (*Id.*) On advice from the Warden, on August 15, 2024, Petitioner appealed directly to the Regional Office, attaching a copy of the DHO report and explaining the delay was caused by MDC denying him access to a pen. (*Id.*) On August 20, 2024, the Regional Director rejected his appeal as untimely and lacking

staff verification for the delay. (*Id.*) Petitioner responded on August 27, 2024, explaining that MDC staff refused to provide him with staff verification. (*Id.*) This, too, was rejected on September 11, 2024. (*Id.* at 4–5). Petitioner obtained a memorandum from Unit Counselor T. Maiolatesi dated September 30, 2024, corroborating that Petitioner's delay in filing his appeal was caused by MDC denying him pens, and explaining that Petitioner did not receive the latest rejection until September 30. (*Id.* at 5). On October 1, 2024, Petitioner sent the corrected appeal and the September 30, 2024, memorandum to Regional Counsel. (*Id.*)

Through his federal filings, Petitioner seeks to challenge the loss of visitation sanctions stemming from both the March 2023 and February 2024 incidents. (Pet.; Pet'r Reply at 2, 4–7; Pet'r Reply Aff. at 2). Because his initial habeas petition was filed before the February 2024 incident occurred and thus does not challenge the denial of social visits arising from that incident, Petitioner requests to supplement his petition pursuant to Federal Rule of Civil Procedure 15(d) to add a challenge to the February 2024 sanctions. (Pet'r Reply at 2).

II.    Procedural History

Petitioner filed this petition with the Pro Se Office of this District on January 19, 2024, challenging the denial of social visits arising from the March 2023 incident. (Pet.) On May 8, 2024, the government filed an opposition to the petition. (Resp't Opp.; Bork Decl.) On October 14, 2024, Petitioner filed a memorandum of law in support of habeas relief and requesting to add a challenge to the denial of social visits arising from the February 2024 incident.[2] (Pet'r Reply; Pet'r Reply Aff.; ECF No. 16).

---

[2] As explained below, Petitioner's challenges to both the March 2023 and February 2024 sanctions fail to establish a cognizable claim under either 28 U.S.C. § 2241 or, liberally construed, under 42 U.S.C. § 1983.

## **LEGAL STANDARD**

Under 28 U.S.C. § 2241, a writ of habeas corpus is available to federal prisoners who challenge, not the legality of the sentence, but its execution. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Execution of a federal prisoner's sentence includes "administration of parole, . . . prison disciplinary actions, prison transfers, type of detention and prison conditions." *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (alteration in original) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)).

A federal prisoner may also challenge the conditions of their incarceration under 42 U.S.C. § 1983. The statute provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Courts have held that although section 1983 does not provide substantive rights, it "creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere," for example, under the Constitution. *E.g.*, *Linares v. Annucci*, No. 19 Civ. 11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17 Civ. 10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

To the extent that the Petition seeks a "directive" requiring MDC to cease its practice of sanctioning inmates with loss of visitation privileges, this request is denied because the Court lacks jurisdiction to order MDC to stop an otherwise acceptable penological practice.

---

As such, the Court will not engage in a full analysis of whether Petitioner may amend his pleadings to include the February 2024 incident and sanctions.

## **DISCUSSION**

I.    <u>Petitioner Failed to Exhaust Administrative Remedies Under 28 C.F.R. § 542.10</u>

To properly file a petition for habeas relief, federal prisoners must first exhaust all available administrative remedies, because "section 2241 exhaustion 'is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review.'" *Bowens v. Federal Bureau of Prisons*, No. 12 Civ. 5591 (PKC), 2013 WL 3038439, at \*3 (S.D.N.Y. Jun. 18, 2013) (quoting *Carmona*, 243 F.3d at 634). A failure to exhaust may be excused if the prisoner has evidence of "cause for [the prisoner's] dereliction and consequent prejudice." *Id.* (quoting *Carmona*, 243 F.3d at 634).

The BOP established the Administrative Remedy Program, codified at 28 C.F.R. § 542.10, *et seq.*, to offer prisoners a mechanism for formal review of issues "relating to any aspect of his/her own confinement," including disciplinary measures. 28 C.F.R. § 542.10(a); *see, e.g.*, *Bowens*, 2013 WL 3038439, at \*4 (habeas petitioner challenging disciplinary sanctions). An inmate may appeal a decision from the DHO by submitting form BP-10 to the Regional Director for the region where the inmate is currently located within 20 calendar days. 28 C.F.R. §§ 542.14(d)(2), 542.15(a), 542.15(b)(1). The prisoner may then appeal the Regional Director's adverse decision by submitting form BP-11 to the BOP's General Counsel within thirty calendar days, which is the final administrative appeal. *Id.* § 542.15(a). Extensions are permitted for valid reasons for delay, including "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal." *Id.* §§ 542.14(b); 542.15(a).

For the March 2023 claim, Petitioner did not properly exhaust his administrative remedies. The BOP Northeast Regional Director denied Petitioner's appeal on June 30, 2023, and Petitioner filed an untimely appeal to the General Counsel almost three months later, on September 28, 2023. (Bork Decl. ¶ 23). Petitioner claims this appeal was delayed because he did not receive the June 30th denial until August 25, 2023, an allegation corroborated by Unit Manager N. Bullock in a memorandum dated November 10, 2023. (Pet'r Reply Aff. at 5–6, 23–24). However, even if the Court were to accept this explanation and determine that Petitioner had thirty days from August 25, 2023, to file the appeal, Petitioner's appeal was still untimely because he filed it *thirty-four* days later. (*See* Bork Decl. ¶ 24–25).

Similarly, for the February 2024 claims filed while at MDC and USP Canaan, Petitioner did not exhaust all his administrative remedies. Petitioner twice attempted to appeal the February 2024 sanctions. For the first attempt, Petitioner tried to appeal the adverse DHO decision while at MDC but ultimately failed to do so for several reasons: While in the SHU, he was denied access to a pen, which is required to fill out certain appeals forms; his unit manager refused to provide a memorandum explaining that his appeal was late because of the denial of pens; and MDC went on lockdown, during which time staff stop providing or collecting administrative remedy forms. (Pet'r Reply Aff. at 2–3). However, he did file internal appeals of the "jail policy of not providing SHU inmates with pens in order to pursue their administrative remedies," filing a BP-8 with the Captain and a BP-9 with the Warden. (*Id.* at 3). When Petitioner was transferred to USP Canaan on July 3, 2024, he again could not appeal the DHO decision because he was separated from his property, including decisions rejecting his internal appeals of the denial of pens,

which he would have needed to attach to explain the delay in appealing the DHO decision. (*Id.* at 3–4). Petitioner eventually obtained a memorandum from Unit Counselor T. Maiolatesi dated August 27, 2024, explaining the delay and requesting an extension for his BP-10 appeal. (*Id.* at 4, 13). Petitioner then filed an appeal[3] with the Regional Director, attaching Maiolatesi's memorandum. (*Id.* at 4). However, the appeal was returned to him for failing to attach the Warden's reply to his BP-9 form. (*Id.*) Smith responded on September 15, 2024, claiming he had never received any reply from the Warden but simply used the appeals form MDC had provided. (*Id.*) Because the Court lacks any evidence that Petitioner properly appealed to the Regional Director and General Counsel, Petitioner did not exhaust his administrative remedies at MDC regarding either the adverse DHO decision or MDC's denial of pens to inmates in the SHU.

For the second attempt to appeal the February 2024 sanctions, Petitioner restarted the administrative remedy process on July 25, 2024, after he was moved to USP Canaan and realized the loss of visitation privileges would continue at the new location. (*Id.* at 4, 20). On the Warden's advice, he submitted an appeal to the Regional Office on August 15, 2024, but it was rejected on August 20, 2024, as untimely and lacking staff verification. (*Id.* at 4, 17, 18). On August 27, 2024, Petitioner sent a new appeal to the Central Office, explaining he could not provide a staff memorandum because the staff at MDC had refused to provide one. (*Id.* at 4, 16). This new appeal was rejected on September 11, 2024, on the grounds that it should have been submitted to the Regional Office and still needed a staff memorandum. (*Id.* at 4–5, 15). Petitioner obtained a second memorandum

---

[3] The Court notes that Petitioner's reply affidavit does not specify whether this appeal was of the February 2024 adverse DHO decision, or of MDC's denial of pens to inmates in the SHU. Regardless of which action he was appealing, the outcome is the same: Petitioner does not point to evidence that he properly appealed to both the Regional Director and the General Counsel.

from Unit Counselor T. Maiolatesi dated September 30, 2024, explaining the delay in appealing the February 2024 sanctions. (*Id.* at 5, 14). According to Petitioner, he submitted this memorandum, along with the corrected appeal, to the Regional Director on October 1, 2024. (*Id.* at 5). However, even if the Petitioner properly appealed to the Regional Director, there is no evidence before the Court that he submitted a subsequent appeal to the General Counsel, as required by 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal.").

Therefore, Petitioner procedurally defaulted by failing to exhaust his administrative remedies and is barred from filing this habeas petition in federal court.

II.    <u>Challenging Visitation Rights Is Not a Cognizable Claim Under 28 U.S.C. § 2241</u>

Petitioner seeks a writ of habeas corpus to restore his social visits with his family and directing the MDC "to cease the practice of punishing all pre-trial inmates" through prohibitions on visitations. (Pet. at 7). Even if Petitioner's claims were not procedurally barred, as determined above, the Court finds that he lacks a cognizable claim for relief.

Under 28 U.S.C. § 2241, a federal prisoner may challenge the execution of his sentence, including the imposition of disciplinary sanctions. *See Thompson*, 525 F.3d at 209. However, courts in this Circuit as well as others have held that disciplinary sanctions that have only "a speculative or incidental effect on the length of [prisoner's] sentence," such as visitation rights, cannot be challenged via a habeas petition under section 2241. *Homen v. Hasty*, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (alteration in original) (quoting *Sisk v. CSO Branch*, 974 F.2d 116, 117–18 (9th Cir. 1992)); *Hinebaugh v. Wiley*, 137 F. Supp. 2d 69, 76 (N.D.N.Y. 2001) (noting that "loss of commissary and other non-custodial privileges have only a tangential and speculative impact on the imposition of future

administrative sentences" and thus are not "close to the core of habeas corpus"); *Hernandez v. Lindsay*, No. 08-CV-1495 (SFJ), 2011 WL 3163078, at *3 (E.D.N.Y. Jul. 22, 2011) (citing *Homen* to dismiss *pro se* petitioner's section 2241 challenge to his loss of visitation and commissary privileges); *Garrett v. Ask-Carlson*, No. 15 Civ. 0723 (PAC) (JCF), 2015 WL 5511914, at *1 (S.D.N.Y. Sept. 18, 2015) (noting that several courts have held that "complaints about civil rights violations resulting in restrictions on a prisoner's commissary or visitation privileges cannot be brought in a petition for a writ of habeas corpus"); *Reynolds v. Petrucci*, No. 20 Civ. 3523 (LLS), 2020 WL 4431997, at *1 n.1 (S.D.N.Y. July 29, 2020) (same).

Although the Court acknowledges that the prospect of being denied social visits for four years must be extremely distressing to Petitioner, the Court finds the reasoning of the courts in the above-cited cases to be persuasive. Here, since the Petitioner is challenging only his loss of visitation rights in both his March 2023 and February 2024 claims, the Court finds no proper basis for habeas relief under section 2241.

III.    The Petition Fails to Establish a 42 U.S.C. § 1983 Claim

Where a party appears *pro se*, courts are required to liberally construe the pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F. 3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "If a *pro se* litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." *Thompson*, 525 F.3d at 209. In addition to pursuing claims under section 2241, *pro se* prisoners have also challenged disciplinary sanctions under 42 U.S.C. § 1983, claiming the sanctions violated their

constitutional rights under the Eighth or Fourteenth Amendments. *See, e.g.*, *Marcus v. Annucci*, 20 Civ. 6234 (PMH), 2022 WL 280935 (S.D.N.Y. Jan. 31, 2022) (holding that, in the context of a prisoner's *pro se* section 1983 action, disciplinary sanctions depriving prisoner of visitation privileges for one hundred eighty days did not violate the Eighth or Fourteenth Amendments).

A. <u>No Eighth Amendment Claim</u>

Inmates may challenge the conditions of their confinement under section 1983 by alleging the conditions violate the Eighth Amendment. *See, e.g.*, *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). To state an Eighth Amendment section 1983 claim, the prisoner must allege first that the defendant, *e.g.*, prison official, "acted with a subjectively sufficiently culpable state of mind," and second, that the deprivation or conditions of confinement were "objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Marcus*, 2022 WL 280935, at *5 (quoting *Crawford*, 796 F.3d at 256). The deprivation must rise to a sufficient level where it "den[ies] the minimal civilized measure of life's necessities." *Id.* (quoting *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996)); *see also Seymore v. Dep't of Corr. Servs.*, No. 11 Civ. 2254 (JGK), 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit Court of Appeals has explained that '[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a "conditions-of-confinement claim."'" (second alteration in original) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1998))).

Courts have held that visitation restrictions do not violate the Eight Amendment if they are limited in time and have a rational relation to the conduct being disciplined.

*Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003) (holding that two-year visitation restriction which limited inmates with multiple substance abuse violations to no visitors except attorneys and clergy did not violate Eighth Amendment); *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 227–28 (W.D.N.Y. 2003) (holding that three-year suspension of visitation rights, after inmate was found guilty of attempting to bring weapon into visitation room, did not violate Eight Amendment because suspension was neither permanent nor arbitrarily applied); *Zimmerman v. Burge*, No. 06-CV-0176 (GLS) (GHL), 2008 WL 850677, at *3, *14 & n.63 (N.D.N.Y. Mar. 28, 2008) (holding that "indefinite" suspension of inmate's visits with his wife, after the two conspired to smuggle drugs into prison, did not violate Eight Amendment); *Caldwell v. Goord*, No. 09-CV-0945 (SR), 2013 WL 1289410, at *5 (W.D.N.Y. Mar. 27, 2013) (noting that "denial of visitation for a limited time does not amount to the sort of wanton infliction of pain prohibited by the Eighth Amendment"). Notably, the Second Circuit has not "recognized a right to visitation or telephonic contact between [close family members] where one of the persons is in prison." *Malavé v. Weir*, No. 16-CV-0009, 2018 WL 500644, at *6 (D. Conn. Jan. 22, 2018), *aff'd*, 750 F. App'x 65 (2d Cir. 2019).

Petitioner was sanctioned in 2023 and 2024, both times for possession of a contraband cellphone, losing visitation privileges from March 21, 2023, through March 20, 2027. (Bork Decl. at 4–5, 9–10). The four-year visitation restriction is similar in length to the multi-year restrictions in other cases that were found not to be unconstitutional. *See Hernandez*, 272 F. Supp. 2d 227–28; *Overton*, 539 U.S. at 136–37. Because contraband cellphones could theoretically be used to facilitate bringing other contraband into the detention center via a visitor, *see Zimmerman*, 2008 WL 850677 (visitations can be

13

misused to bring contraband into a prison), restricting visitation privileges meets the low bar of being rationally related to the legitimate penological interest of punishing this disciplinary violation and deterring similar future misconduct. Indeed, the 2023 incident was not the first time Petitioner was found in possession of a contraband cellphone. The first time he was disciplined for this violation was in November 2022; he was sanctioned with loss of phone privileges for 90 days, which clearly was insufficient deterrence. (Bork Decl. at 11). Therefore, even if the Court were to liberally construe Petitioner's pleadings as a section 1983 claim alleging Eighth Amendment violations, the claim would still fail because the sanctions are limited in time and are rationally related to his misconduct and a legitimate penological interest.

B. <u>Fourteenth Amendment</u>

To state a violation of Fourteenth Amendment procedural due process rights, a plaintiff must "(1) identify a protected liberty interest; and (2) identify the procedure that deprived him of that liberty interest." *Marcus*, 2022 WL 280935, at *6 (quoting *Linares*, 2021 WL 2689736, at *7); *see also Joseph v. Cuomo*, No. 20-CV-3957 (PKC) (LB), 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021).

Under the first prong, a prisoner's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Inmates do not have a protected liberty interest with respect to *contact* visits. *See Hernandez v. Sposato*, No. 14-CV-4593, 2015 WL 4097784, at *4 (E.D.N.Y. July 8, 2015); *Zimmerman*, 2008 WL 850677, at *2 ("[T]here is abundant case law establishing that inmates have no liberty or property interest in contact visits."); *Baskerville v. Goord*, No.

97 Civ. 6413 (BSJ), 1998 WL 778396, at *6 (S.D.N.Y. Nov. 5, 1998) (noting it is "well established" that "contact visits of prison inmates are a privilege for inmates, not a right, and thus do not give rise to a liberty interest protected by the due process clause"); *Block v. Rutherford*, 468 U.S. 576, 589 (1984) (holding that the "Constitution does not require that detainees be allowed contact visits . . . when administrators have determined . . . that such visits will jeopardize the security of the facility"). However, a deprivation of *all* visitations, including both contact and non-contact, may implicate a protected liberty interest. *See Marcus*, 2022 WL 280935, at *7 (noting nevertheless that the "Court has found no precedent determining definitively whether the deprivation of all visitation implicates a liberty interest under federal or New York State law[4]").

If a plaintiff sufficiently pleads a protected liberty interest is at stake, the second prong requires the plaintiff to prove he was deprived of procedural due process during the prison disciplinary hearing. *Marcus*, 2022 WL 280935, at *7. The Second Circuit has held that a prisoner is entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)).

---

[4] At least one court has noted that state law "has been found to create such an interest in certain contexts," such as when a state's laws or regulations place substantive limits on official discretion to deny the liberty at issue. *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337, 341 (S.D.N.Y. 1999); *see also Hill v. Laird*, No. 06-CV-0126 (JS) (ARL), 2016 WL 3248332, at *10 (E.D.N.Y. June 13, 2016). But the petition does not specify, nor is the Court aware of, any law or regulation that would limit the Department of Corrections' discretion to impose visitation restrictions.

Here, because the filings before this court do not indicate whether the loss of visitation privileges include both contact and non-contact visits, the Court could possibly find that loss of visitation privileges from March 21, 2023, through March 20, 2027, implicates a protected liberty interest. However, even if Petitioner were permitted to amend his petition and were to claim deprivation of both contact and non-contact visits, he nonetheless fails the second prong, because he was given sufficient process: He was delivered the incident report and was provided notice and documents setting forth his rights before the DHO. (Bork Decl. at 3). Furthermore, Petitioner declined to request either a representative or witnesses to provide testimony and did not present any documentary evidence for the DHO to review. (*Id.* at 3–4).

Therefore, even if the Court were to liberally construe the petition as a section 1983 claim alleging that the March 2023 and February 2024 disciplinary sanctions violated his Fourteenth Amendment procedural due process rights, Petitioner would still fail to state such a claim because he was not denied process.

## **CONCLUSION**

For the reasons set forth above, the Court DENIES the Petition for a writ of habeas corpus. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment, close the case, and mail a copy of this Opinion & Order to Petitioner at the address listed on ECF.

SO ORDERED.

Hon. Ramón E. Reyes, Jr.    Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.08.07 10:56:18 -04'00'

_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: August 7, 2025
          Brooklyn, NY